UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00120-RJC
(3:16-cr-00277-RJC-DCK-1)
(3:05-cr-00213-RJC-DCK-1)

| | | |
|---|---|---|
| **RANDOLPH HARRIS AUSTIN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

I.      **BACKGROUND**

A.      **Offense Conduct**

In 2005, a jury convicted Randolph Harris Austin ("Petitioner") of conspiracy to possess

with intent to distribute cocaine and cocaine base and attempt to possess with intent to distribute

cocaine base. [Criminal Case No. 3:05-cr-00213-RJC-DCK-1, Doc. 46 at ¶ 56: Presentence

Investigation Report (PSR)]. This Court sentenced Petitioner to life imprisonment, but later

reduced his sentence to a term of imprisonment of 132 months. Id., Docs. 162, 206. Petitioner

_____

[1] Citations to the record herein contain the relevant document number referenced preceded by either the
letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00120-
RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number
3:16-cr-00277-RJC-DCK-1.

began serving his four-year term of supervised release on May 26, 2015. Id., Doc. 216. Soon thereafter, Petitioner resumed dealing drugs. [CR Doc. 94 at 44-46, 48-49: Sentencing Tr.].

In March 2016, working with a confidential informant (CI), officers with the Gastonia Police Department and FBI arranged two purchases of cocaine from Petitioner. On March 1, 2016, Petitioner sold an ounce of cocaine to the CI as part of a controlled buy. [CR Doc. 42 at ¶¶ 5-7]. Twenty days later, the CI purchased an ounce and a half of cocaine from Petitioner, also in a controlled buy. [Id. at ¶¶ 8-9]. On May 6, 2016, a warrant was issued on Petitioner's violation of the terms of his supervised release.[2] [Criminal Case No. 3:05-cr-213, see Doc. 216: Probation Petition].

After these transactions, officers continued to investigate Petitioner. On May 12, 2016, officers conducting surveillance on Petitioner observed him arrive at his apartment in Dallas, North Carolina in a rental car; walk into his apartment; and return to the car a few minutes later, carrying a gray shopping bag. [Id. at ¶ 10; CR Doc. 38 at 69-70: Trial Tr.]. Petitioner, who was driving a male passenger, stopped briefly at a Dollar General and bought supplies. [CR Doc. 38 at 70]. Petitioner then drove to a home in Gastonia, North Carolina. [Id.]. Petitioner and his passenger went into the home, with Petitioner carrying the gray shopping bag with him. [Id. at 71]. About two hours later, Petitioner returned to the car with some items and began to back down the long driveway leading from the home to the road. [Id. at 71-72]. Before Petitioner reached the end of the driveway, marked police cars turned on their lights and sirens to stop Petitioner. [Id. at 72]. He immediately put his care into drive and sped back up the driveway. Officers pursued him and eventually removed Petitioner from the car. [Id.].

---

[2] Ultimately, the Court revoked Petitioner's supervised release for violating its terms and sentenced him to a term of imprisonment of two years to run consecutively to the term that was imposed in the instant underlying criminal proceedings, as discussed below. [Case No. 3:05-cr-213, Doc. 242: Judgment].

When investigating officers walked up to Petitioner's car, they saw a small baggie containing one-and-a-half grams of cocaine in the front passenger's area of the car, along with a knife with white residue on it. [See id. at 72-73]. Officers found a gray shopping bag containing liquid and a white substance that was leaking onto the rear floorboard. [Id. at 73]. Officers also found a clear Pyrex measuring cup on the rear floorboard. [Id. at 139]. A probation officer, who was part of the surveillance team, placed the leaking shopping bag into the Pyrex measuring cup "so that it wouldn't leak all over the floor." [Id. at 77, 139-41].

Then, because the gray shopping back was leaking into the Pyrex cup, United States Probation Officer Jason Kemp removed the bag from the measuring cup, put it into a large mason jar, and then sealed it closed. [Id. at 77-78, 94, 142]. So that the liquid that remained in the Pyrex cup would not overflow the mason jar, Kemp poured the remaining liquid into a second mason jar. [Id. at 142-43]. Officers then turned the evidence over for submission to a lab for testing. [Id. at 92, 143].

Detective Joseph Brogdon of the Gastonia Police Department and Kemp interviewed Petitioner, who admitted that the small bag of cocaine on the front seat of the car was for his own personal use. [Id. at 74-75, 146, 153]. Petitioner told the officers that he had been trying to cook cocaine into crack but that he "couldn't get it to come out right," so he was taking it, referring to the shopping bag found on the rear floorboard, to a friend's house. [Id. at 75, 118-120, 146, 153].

The morning after Petitioner was arrested, Brogdon called the state laboratory and spoke with a drug analyst to find out how the lab wanted to receive the evidence. [Id. at 78-80, 95]. The analyst instructed Brogdon to strain the water from the bag and agreed that a coffee filter would be suitable for the task. [Id. at 80, 95]. Placing a coffee filter on top of the mason jar, Brogdon set the bag of crack cocaine and water inside the filter on top of the open mason jar. [Id. at 80-81,

3

100, 102].  Three days later, he put the mason jar, shopping bag, and coffee filter into a large evidence bag and sent the bag to the state lab for testing.  [Id. at 82-85, 102].  The lab determined that the solid substance remaining in the shopping bag as 15.5 grams of crack cocaine and that the strained liquid also contained cocaine base.  [Id. at 172-73].

In October 2016, Petitioner was charged in a Bill of Indictment with distribution and possession with intent to distribute a mixture or substance containing a detectable amount of crack cocaine based on the May 12 transaction.  [CR Doc. 1: Bill of Indictment].  Petitioner originally requested to proceed pro se, and the Federal Public Defenders were appointed as standby counsel. [October 28 & 31, 2016 Docket Entries].  On November 23, 2016, the Government filed notice of its intent to call Nathan Perron, a forensic scientist, as an expert witness at trial.  He would testify "concerning the identification of cocaine and crack cocaine" and the weight of the controlled substances that were seized.  [CR Doc. 7].  On November 28, 2016, at Petitioner's request, the Court appointed new counsel, Roderick Davis, for Petitioner and continued Petitioner's trial date. [Nov. 28, 2016 & Dec. 1, 2016 Docket Entries].

On December 15, 2016, the grand jury returned a superseding indictment, charging Petitioner with two counts of distribution and possession with intent to distribute "cocaine," a Schedule II controlled substance, on March 1 and 16, 2016 (Counts One and Two), and with one count of possession with intent to distribute crack cocaine, also a "Schedule II controlled substance," on May 12, 2016 (Count Three).  [CR Doc. 13: Superseding Indictment].  The Superseding Indictment charged that all three offenses were committed in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  [Id.].

**B.  Petitioner's Trial**

Petitioner's trial was set to for the trial term beginning on February 6, 2017.  [Nov. 28, 2016 Docket Entry].  On January 8, 2017, Petitioner filed a pro se motion requesting a trial "as soon as possible," stating that the Government was not going to make any "reasonable plea offers." [CR Doc. 15].  This Court denied the motion without prejudice because Petitioner was represented by counsel.  [CR Doc. 19].  On February 5, 2017, Petitioner moved for a continuance of the trial, citing a recent medical issue and the need for additional time to review electronic discovery and to obtain an expert.  [CR Doc. 23].  Counsel noted that, in compliance with Petitioner's wishes, counsel had attempted to move the proceedings along.  [CR Doc. 37 at 3-4: Trial Tr.].  Counsel stated that he had shown Petitioner still photographs and transcripts of the two drug transactions, but that he believed that Petitioner had the right to see those transactions in real time video.  [Id. at 4-5].  Counsel noted that Petitioner had requested to retain an expert and to challenge the chain of custody, that counsel had suggested ways to challenge chain of custody at trial, and that "there was some cell phone data" that Petitioner had not yet seen.  [Id. at 5-6].  Counsel also noted that he had had "extensive" discussions with the prosecutor regarding a plea deal, but that Petitioner believed that he had lost any power in negotiating a plea deal because "everyone is operating on a false interpretation of his past criminal history."  [Id. at 7].

Petitioner also addressed the Court.  He stated that he had had issues with the Assistant Federal Public Defenders, who represented him initially, because "[w]hen we had plea discussions no one [got] my criminal history right," and his current attorney had also been unable to "get to the bottom of what my criminal history is."  [Id. at 9].  Petitioner stated that he wanted to retain an expert to speak to the chain of custody and the quantity of drugs.  [Id. at 10].  The Court granted the continuance to the extent of postponing opening statements and the presentation of evidence

until the following day. [Id. at 11-12]. Petitioner then requested and was granted permission to proceed pro se. [Id. at 13-21].

Petitioner filed a motion in limine to exclude the cocaine, baking soda, and water mixture taken from his car. [CR Doc. 38 at 5-7]. He argued, "[t]hat's the reason why we're here today is because of the cocaine base that the government has been trying to have me plead to and admit guilty to when that's not what I have…." [Id. at 7]. Petitioner also requested a jury instruction, if the Court allowed the crack cocaine to be admitted, "on the lesser included offense" that he possessed crack cocaine for personal consumption. [Id. at 11]. Petitioner also stated that he was not prepared to have an expert testify regarding the chemical analysis of the drugs found in his car. The Court reminded Petitioner that he had filed a motion for a speedy trial. [Id. at 11-12].

During his opening statement, Petitioner admitted that he had sold cocaine to the Government's informant as alleged in Counts One and Two of the Superseding Indictment. [Id. at 28; see CR Doc. 94 at 88: Sentencing Tr.]. He also admitted that he had cocaine on May 12 and that he was trying to cook it into crack, but that because the stove was not working and there was no microwave where he was, he decided to take the substance to a friend's house to cook it. [Id. at 28-29]. Petitioner argued that the substance was not crack cocaine at the time the officers seized it from his car. [Id. at 30]. Petitioner stated to the jury that he wanted to present a chemist or an expert witness, but that the Court would not appoint such a witness and he could not afford to retain one. [Id. at 25-26]. Petitioner also argued that the police "manipulate[d]" evidence and transformed powder cocaine to crack cocaine. [Id. at 28].

The Government presented evidence from several law enforcement witnesses, including Brogdon and Kemp, as well as testimony from Nathan Perron, a forensic chemist with the North Carolina State Crime Laboratory. [CR Doc. 38 at 168]. Perron testified that the shopping bag

contained 240 grams of liquid containing cocaine base. [Id. at 172-73]. According to Perron, the substance in the plastic bag was damp and hard but "kind of sticky" when he received it in the state lab, and he heated it to remove the water. [Id. at 182-83]. Perron testified that powder cocaine is converted to crack cocaine when it is dissolved in water and mixed with baking soda. [Id. at 175]. He further testified that removing the water "gets it into a form in which it can be smoked" but that is not "what turns it from cocaine into crack cocaine" and heat is not necessary to convert powder cocaine into crack cocaine. [Id. at 175, 177, 186]. Perron also explained that straining cocaine in water through a coffee filter will not turn it into crack cocaine because it is the baking soda, or base, that creates the pH change necessary to convert powder cocaine into cocaine base. [Id. at 176, 186]. Perron testified that "[t]he water is just the vehicle in which all of this take[s] place" and it is the chemical structure that makes a substance crack cocaine, not the form it takes. [Id. at 176, 183, 186].

After the Government rested its case, Petitioner moved for a judgment of acquittal, arguing that there was no evidence that he intended to distribute cocaine or crack cocaine, that all the evidence referred to personal use, and that the evidence showed that the substance he possessed on May 12 was not yet crack cocaine because the water had not been extracted. [Id. at 189-191]. The Court denied Petitioner's motion and he declined to testify or put on any evidence. [Id. at 192-93].

The Court reviewed the jury instructions with the parties. Specifically, the Court advised that it intended to instruct the jury about "what a Schedule II controlled substance is" and that both "cocaine and cocaine base are Schedule II controlled substances." [Id. at 200]. Petitioner did not object to that instruction nor to the verdict form. [Id. at 200, 203-04]. During closing arguments, Petitioner argued that he did not intend to distribute the liquid found in his car on May 12, that the

7

drugs found were for personal use, and that for a substance "to be either crack or cocaine it has to be in a form where it can be consumed." [CR Doc. 39 at 24-25, 33]. Petitioner claimed that when he possessed the liquid it had not been converted into cocaine base because "the heating process or water extraction process had not occurred." [Id. at 32-33]. Petitioner also contended that he could not take a plea to something he did not do. [Id. at 30].

The Court instructed the jury, without objection, that to find Petitioner guilty, the jury was required to find that he possessed with intent to distribute a "Schedule II controlled substance." [Id. at 39]. The Court also instructed the jury that "cocaine and cocaine base are Schedule II controlled substances" and that the jury had to agree unanimously on "what type of drug, if any, was established beyond a reasonable doubt." [Id. at 41-43]. The jury convicted Petitioner on all three counts. [CR Doc. 26: Jury Verdict].

**C.      Petitioner's Sentencing**

Prior to Petitioner's sentencing, a probation officer prepared a Presentence Investigation Report (PSR). [CR Doc. 42: PSR]. The probation officer calculated a base offense level of 28 based on Petitioner's responsibility for nearly 72 grams of powder cocaine and 255 grams of crack cocaine. [Id. at ¶ 27]. Based on Petitioner's Total Offense Level (TOL) of 28 and a Criminal History Category of III, the probation officer found a recommended guidelines range of 97 to 121 months' imprisonment. [Id. at ¶¶ 35, 69, 136].

The Court appointed Haakan Thorsen to represent Petitioner at sentencing. [CR Doc. 51; Aug. 28, 2017 Docket Entry]. Thorsen filed a motion for status of counsel, citing Petitioner's request for Dr. Edward Brown to be appointed as an expert in chemistry to testify at the sentencing hearing. [CR Doc. 52]. Thorsen declined to file the motion because he believed it frivolous. [Id.].

8

Petitioner then asked Thorsen to withdraw. [Id.]. The Court granted Petitioner's motion for a chemistry expert but denied Petitioner's request to remove counsel. [CR Doc. 61, 67].

Petitioner objected to the PSR, arguing that he should not be held responsible for the 240 grams of liquid "waste material" in which some of the crack cocaine was suspended. [CR Doc. 78]. Petitioner also argued he should receive a two-level reduction for acceptance of responsibility. [Id.]. The United States agreed that the 240 grams of liquid cocaine base "could reasonably be characterized as wastewater" and should not be included in the drug-quantity calculation used to determine the sentencing range advised by the Guidelines. [CR Doc. 81: Govt. Sentencing Memorandum]. The Government argued, however, that the presence of liquid cocaine was relevant to determining an appropriate sentence under the sentencing factors in 18 U.S.C. § 3553(a) and that its presence supported an upward variance. [Id.]. The Government requested a 120-month sentence. [Id. at 5; CR Doc. 94 at 89, 94: Sentencing Tr.].

Petitioner was sentenced on May 22, 2018. At the hearing, Petitioner again requested and was granted permission to represent himself. [CR Doc. 94 at 3, 6]. Proceeding pro se, Petitioner argued his "supplemental motion for new trial," arguing that the verdict form did not allow the jury to determine whether the substance Petitioner possessed as charged in Count Three was "cocaine hydrochloride or cocaine base commonly known as crack." [Id. at 8]. The Court concluded that Petitioner's new trial motion was untimely. [Id. at 9]. The Court also addressed Petitioner's motion on the merits had it not been untimely, concluding as follows:

> [T]he the jury was instructed that its verdict had to be unanimous as to the avenue of proof, that is, distribution or possession with intent to distribute, because each way of violating the statute carries the same penalty. The jury was not required to specify its finding on how the defendant violated the statute.
>
> The jury was also instructed that cocaine and cocaine base are Schedule II controlled substances and their verdict had to be

9

unanimous as to the drug type. Because either drug type carries the same statutory penalty, the jury was not required to specify which one was involved in each count.

So accordingly, [Petitioner's] complaint that he was deprived of a constitutional right of a jury determination of those issues is without merit. No showing that the jury's verdict was not unanimous. The Court has the authority to determine facts affecting the guidelines, such as drug type and quantity at sentencing because they do not impact the statutory maximum.

[Id. at 9- 11]. The Court, therefore, denied Petitioner's motion for a new trial. [Id. at 11].

Thereafter, Petitioner called Dr. Edward Brown, an expert he had hired, who testified that he had "read about the process" of producing crack cocaine. [Id. at 15-17]. Brown did not test the substances in Petitioner's criminal case and had never worked for a crime lab. He testified that powder cocaine is converted into crack cocaine when it is treated with baking soda and water and is heated up to boiling. [Id. at 17-18, 32]. Brown acknowledged that if you mix cocaine, water, and baking soda, the process of converting cocaine hydrochloride into cocaine base "starts immediately," but that the reaction would proceed very slowly at room temperature. [Id. at 19, 30].

Avery Holmes, a drug-trafficking associate of Petitioner's, also testified at the sentencing hearing. He testified that in the summer of 2015, after Petitioner's release from federal prison in May of that year, Petitioner approached Holmes about buying cocaine from him. [CR Doc. 44-45]. Petitioner explained to Holmes that he had "just got out" and needed to "get his feet back in the game and get some cocaine," because he needed to "make more money" than he could make at his job at a local hotel. [Id. at 45]. About a month later, Petitioner told Holmes that he "had a little something going on" but was looking for "a connect." [Id. at 46]. In September 2015, Petitioner told Holmes that he was "back in the pocket" and that he was buying nine to 18 ounces of cocaine at a time. [Id. at 48-49]. Holmes also testified that he was incarcerated for having

10

pleaded guilty to an unrelated drug conspiracy charge and that he had cooperated with the United States and had received a reduction in his sentence in that case for substantial assistance. [Id. at 43]. He also stated that he was testifying of his own free will and that the United States had not promised that it would do anything for him. [Id. at 51].

This Court found that the evidence was clear that, when Petitioner was arrested, there was a detectable about of cocaine base in the liquid inside the gray shopping bag and that there was sufficient evidence to support the jury's verdict. [CR Doc. 94 at 40]. The Court concluded that under U.S.S.G. § 2D1.1(c), application note A, it could use the entire weight of the liquid seized from Petitioner on May 12 in calculating Petitioner's sentence. The Court, however, further determined that it would consider only the 15.5 grams of crack cocaine given the United States' agreement that it was reasonable to use this lower amount. [Id. at 41]. The Court rejected Petitioner's request for a reduction for acceptance of responsibility and calculated a total offense level of 20 and an advisory guideline range of 41 to 51 months of imprisonment. [Id. at 41-42, 80]. The Court varied upward to a Criminal History Category of VI and a Total Offense Level of 24, sentencing Petitioner to a term of imprisonment of 120 months. [Id. at 101]. The Court reasoned, "[t]his pattern of criminal activity shows one of the most serious recidivist drug traffickers the Court has seen." [Id. at 102]. The Court concluded that 120 months "simply is the least amount of time necessary to protect the community … from the predatory drug trafficking of [Petitioner]." The Court also made clear that it would have imposed the same sentence regardless of the Guidelines and even if it had dismissed Count Three of the Indictment. [Id. at 102-04]. Specifically, the Court provided that:

> The sentence of 120 months is the sentence that the Court imposes on each count concurrently. It is the same sentence if the Court had acceded to [Petitioner's] request to dismiss Count Three, impose a sentence only on Counts One and Two, the Court have imposed the

> exact same sentence of 120 months in light of the recidivist criminal history and all the other reasons indicated by the Court. They are as applicable to Counts One and Two as they are to Three. The Court would have imposed the sentence of 120 months regardless of any ruling made by the Court with respect to the amounts or even the continuing existence of Count Three.

[Id. at 103-04]. Judgment on Petitioner's conviction was entered on June 19, 2018. [CR Doc. 91: Judgment].

### D. Petitioner's Appeal

Petitioner appealed his 2018 conviction. He argued that this Court should have granted a longer continuance to allow him to retain an expert witness, erred in denying his motion for a judgment of acquittal on Count Three, erred in instructing the jury by constructively amending the Indictment as to Count Three, and imposed a procedurally and substantively unreasonable sentence. United States v. Austin, 765 Fed. App'x 920, 921 (4th Cir. 2019). The Fourth Circuit affirmed Petitioner's conviction and sentence. It held that this Court did not abuse its discretion in granting only a one-day continuance; that the identity of the controlled substance in Count Three was not "integral to the charge;" that there was "ample evidence" that Petitioner knowingly possessed an illicit substance; and that the jury instructions did not alter the crime charged. Id. at 922-23. The Fourth Circuit also held that any procedural error at sentencing was harmless given the ample evidence that this Court would have imposed the same sentence regardless of the Guidelines. Id. at 924.

### E. Petitioner's Motion to Vacate

Petitioner filed the instant motion to vacate on January 29, 2020, at the earliest, arguing various claims of ineffective assistance of counsel. [See CV Doc. 1]. First, Petitioner contends that his attorney improperly advised him regarding the sentence he faced for revocation of the term of supervised release that he was serving for his 2005 conviction. [Id. at 13-15]. As to his 2018

conviction, Petitioner argues that his trial attorney was ineffective for advising Petitioner that the United States had to prove all the elements of the offenses charged in the Superseding Indictment and for failing to request a continuance earlier. [Id. at 15-18]. Petitioner also claims that he received ineffective assistance of counsel at sentencing because his counsel should have moved to excluded Holmes' testimony under U.S.S.G. §6A1.3 prior to sentencing. [Id. at 18]. Finally, Petitioner argues that his appellate counsel was ineffective "for failing to brief and argue" several issues on appeal. [Id. at 18-19]. The Government timely responded on the Court's order to answer. [CV Docs. 2, 3]. In its response, the Government argued that Petitioner's claim of ineffective assistance relative to the supervised release revocation proceedings related to his 2005 drug offense was time barred and requested that it be dismissed on this ground. [Id. at 1, 14-15]. Petitioner replied to the Government's response, but he failed to address the Government's statute of limitations argument on his revocation proceedings claim. [See Doc. 4].

This matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A.    Supervised Release Revocation Proceedings Claim

Section 2255 provides for a one-year limitations period.  28 U.S.C. § 2255(f).  With three exceptions, this period runs from "the date on which the judgment of conviction became final." 28 U.S.C. § 2255(f)(1)-(4) (excepting impediments to filing created by governmental action, rights newly recognized by the Supreme Court and made retroactive on collateral review, and claims based on facts that could not have otherwise been discovered previously through the exercise of due diligence).  Petitioner does not argue that any of these exceptions apply to this claim and the Court sees no such grounds.

Petitioner concedes that his attorney conveyed a plea offer that would have resolved his supervised release violations in January 2017, but argues that his attorney failed to properly explain the time that he faced for the alleged violations, which in turn caused Petitioner to reject the plea offer.  [CV Doc. 1 at 13-15].  This Court revoked Petitioner's supervised release for his 2005 conviction and sentenced him to 24 months' imprisonment on June 19, 2018.  [Case No. 3:05-cr-213, Doc. 242: Judgment].  Petitioner did not appeal that judgment.  See Fed. R. App. P. 4(b)(1)(A); Clay v. United States, 537 U.S. 522, 532 (2003) (holding the limitations period begins to run when the time for seeking review expires).  Because Petitioner did not file his motion to vacate until January 29, 2020, his motion to vacate is untimely.  See 28 U.S.C. § 2255(f). Furthermore, Plaintiff failed to respond to the Government's untimeliness argument and offered to grounds to apply equitable tolling.  [See CV Doc. 4].  As such, the Court will dismiss this claim as time barred.

**B.      Petitioner's Other Claims**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Further, although a criminal defendant has the right to represent himself, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"  Faretta v. California, 422 U.S. 806, 834 n.46 (1975); Peoples v. United States, 403 F.3d 844, 849 (7th Cir. 2005).

**1.      Ineffective Assistance at Trial**

Plaintiff claims his trial counsel was ineffective for advising him that "the prosecution had to prove the elements of the criminal charges" and that he "possessed with intent to distribute the

controlled substances alleged in the indictment." [CV Doc. 1 at 15-16]. Petitioner further contends that, "[a]t no point prior to trial—or even during trial—did counsel advise [Petitioner] that type of controlled substance did not matter and was not an element of offense charged under 21 U.S.C. § 841(a); 841(b)(1)(C)." [CV Doc. 1 at 16]. Petitioner, however, concedes that his defense strategy was based "on the assumption" that the United States had to prove that he possessed and intended to distribute crack cocaine. [Id. at 16]. Petitioner admitted to having committed the offenses charged in Counts One and Two in his opening statement and does not dispute his guilt to those offenses now. [See CR Doc. 38 at 28; CR Doc. 94 at 88]. The Court, therefore, looks only to Count Three.

Petitioner's counsel's alleged advice that "the prosecution had to prove the elements of the criminal charges" was a correct statement of the law. As the Fourth Circuit noted on Petitioner's appeal, however, "the particular identity of the controlled substance [Petitioner] possessed was not integral to the charge in Count 3." Austin, 765 Fed. App'x at 922 (citing United States v. Tillman, --- F.3d ---, ---, No. 17-4648, 2019 WL 921534, at *7 (4th Cir. Feb. 26, 2019) (discussing proof required for baseline § 841 offense)). Namely, "a defendant need not know the exact nature of a drug in his possession to violate § 841(a)(1); it is sufficient that he … be aware that he … possesses *some controlled substance*." Id. (citations omitted). Accordingly, any error did not lie with Petitioner's counsel, who allegedly advised Petitioner that the Government had to prove the elements of the crimes charged, but with Petitioner for assuming that the Government had to prove Petitioner knowingly possessed crack cocaine, in particular.

Further, the jury, as instructed, was required to agree unanimously on "what type of drug, if any, was established beyond a reasonable doubt" for each charge. As Petitioner was told at sentencing, however, the verdict form did not include a specification of the controlled substance

found for each charge because the penalty was the same regardless of whether the jury found the controlled substance in each offense to be cocaine or crack cocaine. Accordingly, any advice by Petitioner's counsel that the "type of controlled substance did not matter" would have been incorrect.

Petitioner chose to represent himself and chose to pursue a trial strategy that did not yield the benefit he thought it would. Petitioner cannot now "complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" Faretta, 422 U.S. at 834 n.46. In short, Petitioner has failed to show deficient performance of counsel. See Strickland, 466 U.S. at 689.

As to prejudice, Petitioner makes the bare assertion that he "would have accepted the prosecution's plea agreement offer(s) and/or entered guilty plea and received credit for acceptance of responsibility." [CV Doc. 1 at 16]. This is insufficient to show prejudice. The Court made clear at sentencing that it would have imposed the same 120-month sentence even if Count Three of the Superseding Indictment had been dismissed and regardless of the Guidelines, "in light of the recidivist criminal history and all the other reasons indicated by the Court." As such, there is no reason to believe, even if with a plea agreement, that the Court would have sentenced Petitioner differently than it did, assuming for the sake of argument that Petitioner could or would have received the benefit of dismissal of Count Three with a plea. Petitioner, therefore, has not shown prejudice on this ground either. Strickland, 466 U.S. at 687-88.

Petitioner also claims his counsel was deficient for failing to move for a continuance earlier "for the purpose of adequately preparing [Petitioner's] defense strategy." [CV Doc. 17-18]. Petitioner elaborates that counsel's alleged failure to timely move to continue the case denied Petitioner "the expert and investigative services needed to substantiate [Petitioner's] claims that

17

law enforcement agents tampered with evidence and corrupted the chain-of-custody standards regarding that evidence." [CV Doc. 1 at 17-18].

This claim is not well taken. Petitioner filed a speedy trial motion with the Court, asking that his case be set for trial "as soon as possible" and he also expressed the same concern to his attorney. [CR Doc. 15; CR Doc. 37 at 3]. The Court granted Petitioner's request to proceed pro se and continued the trial until the next day but declined to grant a longer continuance.

Further, Petitioner has not shown that there was a reasonable probability that, if counsel had moved for a continuance earlier, the result of his trial would have been different. See Strickland, 466 U.S. at 694. Additionally, Petitioner had the opportunity at trial to cross examine the witnesses who he claimed mishandled evidence. And Petitioner has not shown that retaining an expert had any reasonable probability of a different result at trial. Namely, even Petitioner's own expert testified that mixing cocaine with baking soda and water produces cocaine base.

Therefore, even if counsel were deficient for failing to earlier request a continuance, despite Petitioner's speedy trial motion, Petitioner has failed to show prejudice on this claim, and it will be dismissed. See Strickland, 466 U.S. at 687-88, 694.

### 2. Ineffective Assistance at Sentencing

Petitioner argues that counsel was deficient at sentencing for failing to move to exclude testimony from an informant, Holmes, under U.S.S.G. §6A1.3 and for not presenting evidence to refute Holmes' testimony. [CV Doc. 1 at 18]. This argument is also not well taken. First, these contentions are conclusory, see United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013), and without merit. Section 6A1.3(a) provides:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the

> sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. §6A1.3. As such, there simply would have been no basis for a motion to exclude Holmes' testimony before sentencing under the circumstances of this case.

Second, as at trial, Petitioner made the calculated choice, despite the Court's admonitions, to represent himself. [See CR Doc. 94 at 3-6]. Petitioner himself, therefore, could have moved to exclude Holmes' testimony, but he did not. Further, it was within Petitioner's purview to present evidence at the sentencing hearing to refute Holmes' testimony. Petitioner cross examined Holmes at length and was given more than sufficient leeway by the Court to pursue various lines of testimony. [See id. at 50-79]. Ultimately, the Court concluded that there were "sufficient indicia of reliability to support the probable accuracy of the testimony." [Id. at 99]. The Court noted that Holmes' testimony included details that were consistent with known facts, including where Petitioner had worked and the amount of cocaine involved. [Id. at 100-01].

As such, Petitioner has failed to show deficient performance or prejudice on this ground and the Court will dismiss it. See Strickland, 466 U.S. at 687-88, 694.

### 3. Ineffective Assistance on Appeal

Courts should ordinarily find ineffective assistance of counsel for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound

trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different; i.e., that he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Here, Petitioner argues that his appellate attorney should have asserted that this Court erred at sentencing by (1) not dismissing Count Three; (2) sentencing Petitioner based on crack cocaine; (3) improperly vouching for Holmes' credibility; (4) considering Holmes' testimony to be credible when it was not corroborated; and (5) violating his constitutional rights under Giglio v. United States, 405 150 (1972), because the Government failed to disclose that Holmes' received a benefit from his testimony. [CV Doc. 1 at 19]. Petitioner also contends that his appellate attorney was ineffective for failing to argue that the Court violated Apprendi v. New Jersey, 530 U.S. 466 (2000), by failing to use a proper verdict form and that his counsel was "ineffective for arguing constructive amendment, when the type of drug is not an element." [Id.].

Petitioner, however, presents no facts or argument in support of these bare assertions. As such, Petitioner's contentions are wholly conclusory and subject to dismissal. See Dyess, 730 F.3d at 359-60 (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). Petitioner has failed to show deficient performance or prejudice, in any event. Petitioner's appellate attorney raised four issues on appeal, all of which were rejected by the Fourth Circuit in an unpublished opinion. To the extent there exists any legitimate argument on any of Plaintiff's numerous claims of ineffective assistance on appeal, Petitioner has wholly failed to show that the "ignored issues [were] clearly stronger than those presented." Robbins, 528 U.S. 288. Nor has he shown "a reasonable probability that but for counsel's failure to raise an issue on

appeal, the result of the proceeding would have been different." <u>See</u> <u>id.</u> at 285-86. The Court, therefore, need not examine the individual claims of deficient performance on appeal.

As such, because Petitioner has not shown deficient performance or prejudice, his claim of ineffective assistance of counsel on appeal will be denied. <u>See</u> <u>id.</u>

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: December 9, 2020

Robert J. Conrad, Jr.
United States District Judge

21